**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JOHNNY EUGENE HARRIS, | : | CIVIL ACTION NO. |
| GDC ID # 714083, Case # 755788, | : | 1:17-CV-02024-WSD-JSA |
|     Petitioner, | : | |
| | : | |
|     v. | : | |
| | : | |
| HILTON HALL, | : | HABEAS CORPUS |
|     Respondent. | : | 28 U.S.C. § 2254 |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Petitioner, a Georgia prisoner, has filed a 28 U.S.C. § 2254 habeas corpus petition challenging his May 2012 Cobb County convictions on three counts of violating the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-4 ("Georgia RICO") (counts 1-3 (Doc. 12-3 at 118-21) & counts 4-31 (28 predicate RICO acts) (Doc. 12-3 at 122-49)), for which he received a 20-year sentence; and two counts of theft by deception by contract (hereinafter "contract deception"), in violation of O.C.G.A. § 16-8-3 (counts 32 & 33 (Doc. 12-3 at 150-51)), for each of which he received a consecutive 10-year sentence — for a total term of imprisonment of 40 years.  (Doc. 1 at 1; *see* Doc. 11-1 at 1).  Petitioner was also convicted of criminal trespass (count 34), for which he received a 12-month sentence. (*See* Doc. 1 at 1; Doc. 12-3 at 152).

The Court of Appeals of Georgia found the following evidence, construed in the light most favorable to the guilty verdicts, sufficient to sustain them:

> [Petitioner] devised and engaged in a scheme whereby he and others would identify vacant houses and, without permission or knowledge of the rightful owner, [he] or his accomplice would make repairs, change the locks, and rent the house to tenants. They presented prospective tenants with residential lease documents falsely purporting to have authority to rent the property. [He] and his accomplices also convinced others facing foreclosure to enter into a Candidacy Agreement, whereby the victim would pay [his] company in exchange for a false promise to find them another home. The scheme involved 14 homes in which neither [he] nor his company held any property interest.

*Harris v. State*, 750 S.E.2d 721, 722-723 (Ga. Ct. App. 2013) (footnote omitted). The appellate court affirmed Petitioner's convictions and sentences. *Id.* at 722. Petitioner filed a state habeas petition, which was denied on all grounds. (*See* Doc. 20-3). The Supreme Court of Georgia denied his application for a certificate of probable cause to appeal that denial. (Doc. 20-4). Petitioner has now filed a federal habeas petition, raising four main grounds for relief, as discussed below, although he has since abandoned ground four. (Doc. 1; *see* Docs. 6, 28).

## I.   Principles of Federal Habeas Review

### A.   Procedural Default

Federal habeas review is generally barred for a claim that was procedurally

2

defaulted in state court, i.e., a claim "*not* resolved on the merits in the state proceeding" based on "an independent and adequate state procedural ground." *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977).  "[W]here the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the Petitioner's federal claims are barred, *Sykes* requires the federal court to respect the state court's decision."  *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999); *see Bucklon v. Sec'y, Fla. Dep't of Corr.*, 606 Fed. Appx. 490, 492 n.2 (11th Cir. 2015) (same, citing *Bailey*).

Under Georgia law, a defendant procedurally defaults a claim by failing to raise it at the first available opportunity.  *See State v. Larocque*, 489 S.E.2d 806, 808 (Ga. 1997) (noting that Georgia courts have "long followed the contemporaneous objection rule, which provides that counsel must make a proper objection on the record at the earliest possible time to preserve for review the point of error").  Thus, "[e]rrors not raised in the trial court will not be heard on appeal."  *Earnest v. State*, 422 S.E.2d 188, 190 (Ga. 1992).  And if a defendant has "new counsel appointed or retained after [his] trial," he waives claims of ineffective assistance of trial counsel by failing to raise them "at the first possible stage of post-conviction review," i.e., in a motion for new trial or on direct appeal.  *White v. Kelso*, 401 S.E.2d 733, 734 (Ga. 1991).

3

In addition, "failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus." *Black v. Hardin*, 336 S.E.2d 754, 755 (Ga. 1985) (noting, however, that "an otherwise valid procedural bar will not preclude a habeas corpus court from considering alleged constitutional errors or deficiencies if there shall be a showing of adequate cause for failure to object or to pursue on appeal and a showing of actual prejudice to the accused," or if necessary "to avoid a miscarriage of justice where there has been a substantial denial of constitutional rights"). *See* O.C.G.A. § 9-14-48(d) (providing that state habeas court shall "consider whether the petitioner made timely motion or objection or otherwise complied with Georgia procedural rules at trial and on appeal," and, if he did not, shall deny him habeas relief absent cause and prejudice or a miscarriage of justice); *Head v. Stripling*, 590 S.E.2d 122, 128 (Ga. 2003) (stating that "'[m]iscarriage of justice' is primarily associated with its core purpose, i.e., to free the innocent who are wrongly convicted, and should rarely be used to overcome otherwise-valid procedural bars"); *Turpin v. Todd*, 493 S.E.2d 900, 905 (Ga. 1997) (noting that "the procedural default standards of § 9-14-48(d) are modeled on the federal standards").

The procedural bar to federal habeas review may be lifted if the petitioner can

demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law, or (2) a fundamental miscarriage of justice, i.e., that he will remain incarcerated despite his actual innocence unless the federal court considers his defaulted claim.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488-89, 495-96 (1986).  To establish cause for a procedural default, a petitioner must show either that his counsel's assistance was so ineffective that it violated his Sixth Amendment right to counsel or "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488.  "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different" had he presented his defaulted claim.  *Henderson v. Haley*, 353 F.3d 880, 892 (11th Cir. 2003).

To establish a fundamental miscarriage of justice, i.e., "that constitutional error has resulted in the conviction of one who is actually innocent of the crime," a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and he "must show that it is more likely than not that no reasonable juror would have convicted him in the light

5

of the new evidence," *id.* at 327.

If a petitioner has procedurally defaulted a claim in state court and "makes no attempt to demonstrate cause or prejudice" or a fundamental miscarriage of justice, that "claim is not cognizable in a federal" habeas action. *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

### B.    Merits Review

A federal court may not grant habeas corpus relief for claims previously decided on the merits by a state court unless the decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  A state court's determination of a factual issue is presumed correct unless the petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362, 412 (2000), the Supreme Court explained that, in applying 28 U.S.C. § 2254(d), a federal habeas court first ascertains the "clearly established Federal law" based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."

The federal habeas court then considers whether the state court decision is "contrary to" that clearly established federal law, i.e., whether the state court "applies a rule that contradicts the governing law set forth" in Supreme Court cases, or "confronts a set of facts that are materially indistinguishable from" those in a Supreme Court decision "and nevertheless arrives at a result different from" that decision. *Id.* at 405-06.

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, it then considers whether the decision is an "unreasonable application" of that law, i.e., whether "the state court identifies the correct governing legal principle" from the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly[, but r]ather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

7

state court's ruling on the claim being presented in federal court was so lacking in justification that there was *an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement*." *Richter*, 562 U.S. at 103 (emphasis added).

Although a federal court is not prohibited from considering the findings and conclusions that support a lower court's ruling on a petitioner's claims, in this Circuit the relevant ruling is the one issued by the last state appellate court to consider the claims on their merits. *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1231 (11th Cir. 2014) (noting that "the highest state court decision reaching the merits of a habeas petitioner's claim is the relevant state court decision [for a federal habeas court to] review under AEDPA" (internal quotations omitted), which for a Georgia petitioner's state habeas claim is the decision of the Supreme Court of Georgia, even if the Supreme Court "summarily denied" the petitioner's CPC application without offering any rationale for its ruling); *see also Wilson v. Warden*, 834 F.3d 1227, 1230 (11th Cir. 2016) (*en banc*) ("conclud[ing] that federal courts need not 'look through' a summary decision on the merits to review the reasoning of the lower state court"); *id.* at 1235 (noting that when the Supreme Court of Georgia has denied a CPC application without explanation, the petitioner "must establish that there was no reasonable basis" for the

8

denial); *but see Butts v. GDCP Warden*, 850 F.3d 1201, 1204 (11th Cir. 2017) ("Because it does not matter to the result, and to avoid any further complications if the United States Supreme Court disagrees with our *Wilson* decision, we have decided this appeal on the same basis that the district court did: by using the more state-trial-court focused approach in applying § 2254(d).").

### C.   Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the standard for evaluating a claim of ineffective assistance of counsel, which "is an attack on the fundamental fairness of the proceeding whose result is challenged." *Id.* at 697.  The analysis involves two components, but a court need not address both if the petitioner "makes an insufficient showing on one." *Id.*

First, a federal habeas court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690.  The court "must be highly deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  In other words, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered

sound trial strategy." *Id.* (Internal quotations omitted). "Given the strong presumption in favor of competence, the Petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*).

Second, a federal habeas court determines whether counsel's challenged acts or omissions prejudiced petitioner, i.e., whether "there is a reasonable probability" — one "sufficient to undermine confidence in the outcome" — that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (noting that "the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case" (internal quotations omitted)).

"Surmounting *Strickland*'s high bar is never an easy task. . . . Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. . . . The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* at 105 (citations and internal quotations omitted).

10

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. *The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Id.* (citations and internal quotations omitted) (emphasis added).

The foregoing analysis also applies to claims of ineffective assistance of appellate counsel. "A first appeal as of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." *Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (citing *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)). But appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant." *Lucey*, 469 U.S. at 394; *see Robbins*, 528 U.S. at 288 (noting that "it is difficult to demonstrate that [appellate] counsel was incompetent" for failing "to raise a particular claim," and "[g]enerally, only when ignored issues are clearly stronger than those presented, will

11

the presumption of effective assistance of counsel be overcome" (internal quotations omitted)).   The *Richter* test set forth above, which applies when a state court has adjudicated a claim on the merits, also applies to claims of ineffective assistance of appellate counsel.   *See Bourne v. Curtin*, 666 F.3d 411, 414 (6th Cir. 2012) (citing *Richter*, 562 U.S. at 105).

## II.   **Petitioner's Claims**

### A.   **Ground One: Insufficiency of the Evidence**

In ground one, Petitioner claims that he "was convicted on evidence that was insufficient 'to justify a rational trier of fact to find guilt beyond a reasonable doubt.' " (Doc. 1 at 12 (quoting *Jackson v. Virginia*, 443 U.S. 307 (1979)); *see id.* at 12-13); *see also Jackson*, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.")); *United States v. Browne*, 505 F.3d 1229, 1262 (11th Cir. 2007) ("Sufficiency review operates as a backstop to protect the defendant's due process rights, not as a license for the court to second-guess the jury.  Upon a sufficiency challenge, the court must determine only whether, on the basis of the proof adduced by the [state], a jury could rationally have

12

reached a verdict of guilty beyond a reasonable doubt.  Whether the jury actually chose an available, rational result over an irrational alternative is ultimately beyond the court's power to police, but we presume that juries do not make irrational choices when presented with options supported by evidence." (citing *Jackson v. Va.*, 443 U.S. at 319)).

Petitioner was charged with three Georgia RICO violations, each of which required proof that he committed at least two underlying predicate acts.  *See Dorsey v. State*, 615 S.E.2d 512 (Ga. 2005).[1]  Here, 28 predicate acts were charged: 6 counts

---

[1]     To sustain its burden on the RICO charge, the State was required to show that [defendant] violated OCGA § 16-14-4, which provides in relevant part:

(a)     It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

(b)     It is unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.

*Dorsey*, 615 S.E.2d at 517-18 ("Evidence of two predicate acts will sustain [a] RICO conviction. . . . [Where] the evidence authorized the jury to find that [defendant] committed at least two predicate acts, . . . . [the court] need not consider the remaining predicate acts charged." (internal quotations omitted; formatting altered)).

13

each of theft by taking, burglary, and theft by deception by rent collection (hereinafter "rent deception") and 7 counts of forgery of leases, based on Petitioner's having rented homes for which he held neither the title nor a good-faith claim to the title to the property; and 3 counts of contract deception.  Petitioner states: "To successfully attack the RICO conviction, [he] must show that none of the 28 predicate acts are valid. These underlying predicate acts will be attacked in the following order: theft by deception (contract) because three of these are predicate acts to RICO and two are standalone charges, theft by taking, burglary, theft by deception (rents) and forgery (leases)."  (Doc. 28 (Petr. Reply Br.) at 15).

### 1.    Theft by Deception[2]

---

[2]Georgia law, O.C.G.A. § 16-8-3, defines theft by deception as follows:

(a)    A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property.

(b)    A person deceives if he intentionally:

(1)     Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false; . . . .

(4)    Sells or otherwise transfers or encumbers property intentionally failing to disclose a

14

Petitioner challenged on direct appeal the evidence showing rent deception, "arguing that the people to whom he rented the homes received full value for the money they paid him." *Harris*, 750 S.E.2d at 724.  His entire argument was as follows:

> [Petitioner] moved for a directed verdict on the theft by deception counts of the indictment arguing that the State had failed to show any deception on [his] part . . . . [He] argued that there was no theft by deception because the people who moved into the homes paid rent and received consideration (housing) for the rent they paid. The State responded by saying that "there was a deception; the deception led to the taking of money, and that's sufficient for the count." The Court then denied the motion for directed verdict without any further argument or consideration.

(Doc. 20-2 at 145-46 (citations omitted; formatting altered)).  The appellate court rejected this argument because "the evidence showed that [Petitioner] deceived the tenants by claiming that he had authority to rent the premises when he did not, and this

---

substantial and valid known lien, adverse claim, or other legal impediment to the enjoyment of the property, whether such impediment is or is not a matter of official record; or

(5)   Promises performance of services which he does not intend to perform or knows will not be performed. Evidence of failure to perform standing alone shall not be sufficient to authorize a conviction under this subsection.

15

claim led the tenants to make payments to [him] under a false impression." *Harris*, 750 S.E.2d at 724.  Petitioner did not raise a challenge on direct appeal to his convictions for contract deception.

### a.    Contract Deception

> To make a prima facie case of theft by deception based on a promise of service, the state must prove, among other things, a definite contract; a failure to perform the contracted-for services without good and sufficient cause; and a failure to return the money advanced under the contract without good and sufficient cause.

*Campbell v. State*, 648 S.E.2d 684, 686 (Ga. Ct. App. 2007).

> In his reply brief, Petitioner notes the following background:

> [F]ive of the counts are theft by deception (contract) where [P]etitioner took advanced payments to prove credit worthiness and promised to find the client a property they could rent or lease-purchase. First, turn to these theft by deception (contract) counts, three of which are predicate acts (Counts 29, 30, and 31) and two of which are standalone charges (Counts 32 and 33). With these five clients, [P]etitioner entered into a contract called the "Candidacy Agreement" . . . where candidates who had lost their home to foreclosure paid a series of payments to the company to prove their credit worthiness and were promised either a home to rent or a home to buy *vis a vis* lease-purchase.

(Doc. 28 at 15).  After summarizing the testimony of Bruce Capps, his partner in the Candidacy Agreement portion of his business, who had "turned State's evidence against [him]," Petitioner argues that "the State, far from putting on a case with

16

evidence that showed [he] did not have the intention to fulfill these contracts, showed that these contracts were being fulfilled. This testimony was unrebutted and put on by the State." (*Id.* at 16).  In sum, he argues:

> The "rational trier of fact" cannot find "beyond a reasonable doubt" that Mr. Capps and [P]etitioner entered into these "Candidacy Agreements" without the intention of performing on the contracts. A significant amount of money ($50,000) had capitalized the company, one of the contracts had already been fulfilled, Capps had personal money that was adequate to buy several houses, <u>he</u> claimed he intended to do so, and even if [P]etitioner were to die, there was provision for the clients in the form of insurance. No rational trier of fact could find guilt on these facts beyond a reasonable doubt. Since the Appeals Court found that there was sufficient evidence, in the face of the argument above, that finding is unreasonable and fair-minded jurist[s] cannot agree that the state decision is correct.

(*Id.* at 17-18).

But because Petitioner did not present these arguments or challenge his contract deception convictions on direct appeal (*see id.* at 31-32), he has procedurally defaulted his claim that there was insufficient evidence to convict him of contract deception.  He can avoid this procedural default only if he has shown either (1) cause and prejudice to excuse the default — for example, by showing, in a separate claim raised in his state and federal habeas petitions, that ineffective assistance of appellate counsel explains his failure to challenge his contract deception convictions on direct appeal, and that he

17

was prejudiced by that failure[3] — or (2) a fundamental miscarriage of justice based on new, reliable evidence not presented at his trial.  *See* Sect. I. A., *supra*.  But Petitioner has not alleged in a separate claim in either his state or federal habeas petition that appellate counsel was ineffective for failing to argue that his contract deception convictions were improper.  He mentions counsel's failings in this regard only as background to the six claims of ineffective assistance of appellate counsel that he actually has raised in this Court.  (*See* Doc. 28 at 31-32).  Nor has Petitioner alleged any new, reliable evidence to support a claim of actual innocence.

Thus, because Petitioner has failed to attack his contract deception convictions either on direct appeal or in his state and federal habeas petitions, these convictions stand uncontroverted.  Two of these convictions were predicate acts supporting the RICO counts, which therefore also stand uncontroverted because only two predicate acts are required for a Georgia RICO conviction.  *See Dorsey*, 615 S.E.2d at 517-18.  Thus, even if appellate counsel provided ineffective assistance in all six of the ways Petitioner alleges in his federal habeas petition, his convictions and 40-year term of

---

[3]*See Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000) (noting that "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim," and holding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted").

imprisonment still stand.

Moreover, Petitioner cannot show that he was prejudiced by appellate counsel's failure to challenge his contract deception convictions. There was ample evidence to convict Petitioner of RICO contract deception for predicate acts 27 and 28 and to convict him of the separate contract deception counts 32 and 33. (*See* Doc. 14-1 at 94-134, 157-68 (trial testimony of Germain Benjamin (count 32), Gerardson Laurent (predicate act 28), Gwendolyn Kemp (predicate act 27) and Rafael Matos (count 33)). Each of these witnesses testified that he or she paid thousands of dollars to Petitioner, under a written contract with him, to qualify for a home that Petitioner would secure for his or her family after a three-month qualifying period, but that Petitioner did nothing, or almost nothing, to fulfill his contractual obligations in this regard.[4]

_____

[4]Benjamin testified that after paying Petitioner $3,200 over a three-month period, he sent Petitioner a picture of a house he might like to live in, as Petitioner had requested in response to Benjamin's inquiry about the house Petitioner had promised, but Petitioner never did go with him to look for a house, nor did Petitioner send anyone else to do so. Petitioner did, however, demand that Benjamin continue to make monthly payments on the Candidacy Agreement. (Doc. 14-1 at 96-97, 101-04; *see* Doc. 20-1 at 147-50 (Benjamin Candidacy Agreement)). Laurent testified that "[a]fter three months, . . . we were either supposed to be moved into a new place or get the situation on our house worked out. And none of that happened." (Doc. 14-1 at 112). The Laurents continued to pay Petitioner for a total of ten months, during which time Petitioner "kept telling [them] that [his company was] working on getting [them] into a new property," although they were also told that if they missed a payment they would default on the Candidacy Agreement and be required to start over. They continued to pay Petitioner on their Agreement with him until he was arrested. (*Id.* at 113-15). Ms. Kemp gave similar testimony. (*Id.* at 124-27).

Bruce Capps did testify that "we were going to buy houses [to honor the Candidacy Agreements], and, in fact, I had the resources to buy houses" (Doc. 13-1 at 303); "[t]he idea was that if the candidate could demonstrate a certain amount of credit worthiness, then we would work towards getting them into a house" (*id.* at 307); and "[w]e've attempted to buy a number of [houses for candidates], but we bought [only] one" (Doc. 13-2 at 4; *see id.* at 10).  And Petitioner testified that he had assigned to Capps $200,000 of a $1,000,000 life insurance policy to be used to fulfill the Candidacy Agreements in the event of Petitioner's death.  (Doc. 14-1 at 207-08).  But Petitioner has not produced that policy, and the jury was entitled to disbelieve both his and Capps's testimony about their plans to fulfill Petitioner's obligations under the Candidacy Agreements.

Indeed, the jury was entitled to conclude beyond a reasonable doubt from *all* of the evidence regarding the Candidacy Agreements that Petitioner failed to perform the services he contracted to perform in those agreements, had no expectation of doing so, and that he did not have "good and sufficient cause" for his failure to do so or for his failure to return the money the victims of his deception paid him on those contracts. In short, there was sufficient evidence to support the jury's conclusion that Petitioner was guilty beyond a reasonable doubt of Georgia RICO violations based on at least

20

two predicate acts of contract deception and that he was guilty of the two separate counts of contract deception as well.

To the extent Petitioner argues that he had always intended to fulfill his obligations under the Candidacy Agreements, the Georgia courts have made clear in various contexts that "[t]he issue of intent is a jury question . . . ." *Payne v. State*, 301 Ga. App. 515, 519 (Ga. Ct. App. 2009).  And, as noted above, when reviewing a jury verdict for sufficiency of the evidence, it is not the role of a federal district court, especially one sitting in habeas review of state court proceedings, to second-guess the jury's conclusions.  In short, Petitioner's belated challenge to his contract deception convictions is not only procedurally defaulted but it also fails on the merits, and thus his entire federal habeas petition fails.  But, for completeness, the undersigned addresses Petitioner's remaining claims below.

### b.   Rent Deception

As noted above, Petitioner's direct appeal challenge to his rent deception convictions consisted of little more than a reminder that in his motion for a directed verdict at trial, he had "argued that there was no theft by deception because the people who moved into the homes paid rent and received consideration (housing) for the rent they paid."  (*See* Doc. 20-2 at 145-46).

21

In his reply brief, Petitioner notes that "[t]he State's theory was that those tenants who paid rent did not receive a 'legal' place to live; therefore, the rent moneys were stolen by the deception that [P]etitioner had the authority to rent out the houses. There are two elements of theft by deception: the unlawful deprivation of the property of another and doing so by deception." (Doc. 28 at 24 (footnote omitted)); *see* O.C.G.A. § 16-8-3. Petitioner argues:

> The State did not present enough evidence of either of these elements to allow a rational trier of fact to find guilt beyond a reasonable doubt. Further, the Georgia Court of Appeals did not even properly consider the question raised as seen by their discussion of the holding, which does not even discuss this element. Therefore, the Appellate Court's holding is an unreasonable application of the federal standard.
> . . . .
> [P]etitioner concedes that he did not have "adverse possession" as he had originally thought because of a quirk in Georgia law[, but] it can be shown that <u>he still had legal, negotiable possession</u>. [P]etitioner was a squatter whose bare possession was a property that belonged to him (commonly known as "squatter's rights"). A squatter's "right" is one of possession unless or until someone with superior right to the land chases him off. That right is also legally negotiable as seen in Georgia case law.

(Doc. 28 at 24-25). Citing a 1954 Supreme Court of Georgia opinion, Petitioner argues that as a squatter on the properties in question, he had "at the time that the lease contracts were signed, . . . sole, open, notorious, and unchallenged possession of the property. His assertion of the same, in writing (lease) to the renter was, therefore, not

22

a falsehood and could not be legal 'deception.' " (*Id.* at 25-26 (noting that "each renter testified that they lived in the house that they contracted for a minimum of the time they paid for it," except for one, who was "reimbursed for all damages")).  In sum, Petitioner argues that "even as a squatter, [he] had legal possession until shown otherwise and, therefore, could sell or rent that possession as a matter of law to anyone who would knowingly pay for it.  Therefore, no rational trier of fact could find him guilty of theft by [rent] deception." (*Id.* at 26 (formatting altered)).

But this is an argument that Petitioner failed to make on direct appeal (*see* Doc. 20-2 at 145-46), and he did not assert in his state habeas petition, nor does he claim in his federal habeas petition, that appellate counsel provided ineffective assistance for failing to present this argument.  Therefore, regardless of the ingenious, if arcane, nature of the argument in Petitioner's reply brief, he has procedurally defaulted that argument and has shown neither cause and prejudice nor a fundamental miscarriage of justice to excuse that default.  *See Aguero v. United States*, 580 Fed. Appx. 748, 751 (11th Cir. 2014) ("To preserve an argument for collateral review, a party must 'plainly and prominently' raise the issue on direct appeal." (quoting *Brown v. United States*, 720 F.3d 1316, 1332 (11th Cir. 2013), in which the Eleventh Circuit "conclud[ed] that defendant's § 2255 claim was procedurally defaulted because

23

defendant failed to cite the relevant law and make legal argument on the pertinent issue in his brief on direct appeal")).  Petitioner's rent deception convictions thus stand uncontroverted for purposes of federal habeas review.  *See Gray*, 518 U.S. at 162.

### 2.   Theft by Taking

By statute, theft by taking in Georgia occurs when someone "unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, *regardless of the manner in which the property is taken or appropriated*."   O.C.G.A.  § 16-8-2 (emphasis added). Petitioner argued on direct appeal that "asportation [is] . . . an essential element of theft in all cases, and [therefore] he actually 'took' nothing because the property involved was real property which remained in its original place at all times." *Harris*, 750 S.E.2d at 723.  The Court of Appeals of Georgia rejected this argument, first noting that it had previously held that "[t]he word 'theft' is not, like 'larceny,' a technical word of art with narrowly defined meaning, but a word of general and broad connotation, *covering any criminal appropriation of another's property to the taker's use*." *Id.* (internal quotations omitted). The court concluded that "the evidence authorized a finding that [Petitioner], without permission from the rightful owner, made use of real property by charging rent to tenants[, which] unauthorized exercise of dominion over the real

property [of another] was sufficient to support his conviction for theft by taking." *Id.* The court also rejected Petitioner's argument — "that, based on evidence that he was willing to return the property if the rightful owner ever inquired, he lacked intent to steal the properties" — because "his intent to take [the properties] for his own temporary use without the owner[s'] authorization evinces an intent to commit a theft." *Id.* (internal quotations omitted).

Petitioner argues in his reply brief that the statutory definition of theft by taking requires that

> the State [prove either] theft by asportation or after legal receipt appropriation[, but] since the 'property' allegedly stolen was real estate, there can be no asportation, and the State never even allege[d] legal receipt, so there cannot be appropriation after legal receipt. To allow the Court of Appeals to create a third way of committing the crime [appropriation alone] *ex post facto* violates the Due Process Clause in that [P]etitioner would not have been given fair warning that the actions he contemplated constituted a crime.

(Doc. 28 at 19-20 ("Allowing this overly broad interpretation would also invite ridiculous results. If one can steal real estate by mere appropriation to one's own use, kids who jump a neighbor's fence and use the pool will have stolen the pool! The legislature did not intend for such an anomaly. Instead, the action is called criminal trespass. No matter how one looks at the proof of these counts, the State did not prove

25

the asportation/appropriation after legal receipt element.")).

Petitioner asserts that "[t]he Supreme Court of Georgia determined long ago [in *Manning v. State*, 175 Ga. 875 (Ga. 1932)] that real estate is not a type of property that is subject to theft **by any means**. This question never arose at trial and was only raised on appeal obliquely and without showing of authority." (Doc. 28 at 20). "Real estate is not subject to theft by taking because it cannot be moved and [is] not subject to 'fraudulent conversion' aka unlawful appropriation to one's own use because it is not the type of property contemplated in the theft statutes." (*Id.* at 21). Petitioner argues that criminal trespass is a "special law" that "covers appropriation of real property without the consent of the owner," and therefore because

> real estate is not property that can be stolen and there is a more specific law than theft that covers the appropriation of it, there is insufficient evidence to convict on theft. The findings in this case from the Georgia courts on this matter ignore their own laws and precedents and are patently unreasonable. No rational trier of fact could find beyond a reasonable doubt that [P]etitioner is guilty of theft by taking of a property covered under the law.

(*Id.* at 22-23).

Petitioner's argument hinges on the *Manning* holding, but *Manning* alone does not stand for the proposition that real estate cannot be stolen. In *Manning*, the Court of Appeals of Georgia certified the following question to the Supreme Court of

26

Georgia:

> "Section 192 of the Penal Code of 1910 reads as follows: 'If any person who has been intrusted by another with any money, note, bill of exchange, bond, check, draft, order for the payment of money, cotton or other produce, *or any other article or thing of value*, for the purpose of applying the same for the use or benefit of the owner or person delivering it, shall fraudulently convert the same to his own use, he shall be punished by imprisonment and labor in the penitentiary for not less than one year nor longer than five years.' When this section is properly construed, do the words 'or any other article or thing of value,' as used therein, include or cover real estate?"

*Manning*, 166 S.E.2d at 658.  The Supreme Court of Georgia held: "Undoubtedly real estate is a 'thing of value,' but it is not the kind of thing that can be the subject of 'fraudulent conversion' under the Penal Code (1910), § 192."  *Id.* at 660.  The court also noted that "[r]eal estate has never been a subject of larceny."  *Id.* at 659.  But the *Manning* court expressed no opinion as to whether real estate can be the subject of theft by taking, which, by statutory definition, covers the unlawful taking of another's property with the intention of depriving the owner of that property, regardless of the manner in which the property is taken or appropriated.  *See* O.C.G.A. § 16-8-2.  Petitioner has not shown that there was not, at a minimum, sufficient evidence to convict him of theft by taking the lease payments that rightfully belonged to the owners of the real estate he had leased, rather than to him, a "squatter" on that real

27

estate.  This Court simply will not second guess the Georgia courts on the scope of the crime of theft by taking under Georgia law or second guess the jury on its conclusion that there was sufficient evidence to convict Petitioner of that crime.

### 3.    Burglary

On direct appeal, Petitioner also "challenge[d] the sufficiency of the evidence with respect to burglary, arguing that the failure to prove the theft shows that he lacked the intent to commit a felony or theft in the premises, as required by the statutory definition of burglary." *Harris*, 750 S.E.2d at 724 (footnote omitted).  The Court rejected this argument because it had already concluded that Petitioner did commit theft by taking the real property at issue. *Id.*  In his reply brief, Petitioner repeats the argument he raised on direct appeal.  (Doc. 28 at 23).  For the reasons noted above, this argument fails.

Under Georgia law, "[a] person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant dwelling house of another . . . ."  O.C.G.A. § 16–7–1(b).  Because it is unclear whether Petitioner intended to commit a felony or theft *within* the dwellings he entered without authority — rather than commit felonies, as he did, *with respect to* those dwellings — it may

28

have been a bit of prosecutorial overreach to charge Petitioner with burglary as well as the other RICO predicate acts.  But even without the burglary counts, Petitioner could have been, and was, convicted of the RICO violations and the contract deception violations.  So the ultimate outcome of his criminal trial would have been the same.  And it is not within this Court's purview to question the state's interpretation of its own laws unless that interpretation renders a defendant's criminal trial fundamentally unfair.  The Court finds no basis for reaching such a drastic conclusion here, when, as noted above, the contract deception charges were sufficient to justify the sentences Petitioner received.[5]

### 4.  Forgery

Although Petitioner did not challenge his forgery convictions on direct appeal,

---

[5]And Petitioner's total 40-year sentence, while harsh, does not in and of itself warrant federal habeas relief.  *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.  In the area of state sentencing guidelines in particular, we consistently have held that federal courts can not review a state's alleged failure to adhere to its own sentencing procedures.  This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." (citations and internal quotations omitted)); *see also Malloy v. Warden, AG State of Ala.*, 16-13198-A, 2016 U.S. App. LEXIS 23357, at *6 (11th Cir. Dec. 9, 2016) (citing *Branan* to support the conclusion that appellant's "sentence reduction claim is purely a question of state law, and, as such, provides no basis for federal habeas corpus relief").  While a state law sentencing issue may be cognizable on federal habeas review if it implicates the Eighth Amendment ban on "a prison sentence beyond the legislatively created maximum," *Echols v. Thomas*, 33 F.3d 1277, 1279 (11th Cir. 1994), there is no such issue here.

he argues that no rational jury could find him guilty as charged because

> [n]o evidence was presented that [he] 'knowingly' purported to act on
> someone's authority who did not give it.  At all times, relative to this
> case, he claimed, in writing, to be acting on his own authority.  To
> suggest otherwise is utterly ludicrous.  As seen in the discussion above,
> a squatter has property rights, even though they are on the very bottom
> rung of the property-rights ladder.

(Doc. 28 at 27).  Unless Petitioner can establish cause for, and prejudice from, the

failure to raise this claim on direct appeal, or a fundamental miscarriage of justice

based on new, reliable evidence not presented at his trial, he has procedurally defaulted

this claim.  But, as noted also with respect to his contract and rent deception claims,

Petitioner has made neither showing necessary to excuse the procedural default of his

forgery claim.  (*See generally* Docs. 1, 6, 28).

### 5.   Georgia RICO

Finally, with respect to his claims of insufficient evidence, Petitioner argued on

direct appeal that "the evidence failed to support his RICO convictions because the

underlying acts were not proved."  *Harris*, 750 S.E.2d at 724.  The court rejected this

argument as well because, "[i]n light of [its] conclusions above, this argument

present[ed] no basis for reversal."  *Id.*   In other words, because Petitioner had

committed the predicate RICO acts, he had committed the three RICO violations.

30

Petitioner argues that the "RICO charges are a tougher question because this Court has to decide that the entire indictment of [28] counts related to RICO is wholly without merit. This too is possible." (Doc. 28 at 28).

> This entire conviction and even the indictment is based ironically on two mistakes of law: One, that real estate can be the subject of theft, and Two, that one must own real estate to legally lease it out. The clear holdings of the Georgia Supreme Court prove both in the negative, and this Court is bound by those rulings. Because of these errors [P]etitioner has been wrongly convicted. Prosecutors, lawyers and judges have never dealt with a "commercial squatting" operation because the economic environment that made such possible has not been a reality in living memory. Livable houses in Georgia had not been abandoned *en masse* since the Civil War.
>
> Real estate cannot be stolen under Georgia Law, so theft by taking and burglary simply did not happen. Tenants legally received possession of the properties for rents they paid, so theft by deception did not happen. The leases all purported to rely on petitioner's authority, not that of another who did not give it, so there was no forgery. This entire indictment and conviction is fatally flawed. The Georgia Courts unreasonably *misapplied federal law* to these facts.

(*Id.* at 27-28 (emphasis added)).

But, as explained above, Petitioner has failed to show that there was insufficient evidence to support the four convictions on which he was sentenced — the two RICO convictions and the two contract deception convictions.  His arguments about the insufficiency of the evidence to convict him are unavailing.  And his reference to federal law is curious because — other than the gateway issue of the sufficiency of the

31

evidence to convict him — all the questions he raises challenging his convictions involve issues of state law.  But a federal court sitting in habeas review of state court proceedings may not substitute its own understanding of state law for that of the state courts.  *See Green v. Georgia*, 14-14635, 2018 U.S. App. LEXIS 3066, at *20 (11th Cir. Feb. 9, 2018) ("On habeas review, federal courts may not second guess state courts on questions of state law."); *see also Hill v. Humphrey*, 662 F.3d 1335, 1345 (11th Cir. 2011) ("The Supreme Court [has] emphasized that [the Anti-Terrorism and Effective Death Penalty Act of 1996] prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." (internal quotations omitted)); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) ("It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." (internal quotations omitted)).  Petitioner's challenge to his RICO convictions also fails.

**B.    Ground Two: Ineffective Assistance of Appellate Counsel**

In ground two, Petitioner asserts the following six claims of ineffective assistance of appellate counsel.  (Doc. 1 at 14-15).

**1.    Appellate counsel failed to argue that the Georgia Supreme Court**

32

**has held that real estate cannot be the subject of theft by taking or appropriation.**

The state habeas court rejected Petitioner's theft by taking claim by stating:

> Petitioner has not shown that he was prejudiced by his attorney's decision ["that [*Manning*] was too old and would not be a good case to put in their argument"]. The Georgia Supreme Court in *Manning* held that "real estate has never been a subject of *larceny*," as land was incapable of asportation. *Manning*, 175 Ga. at 878-79 (emphasis added). However, as the Court of Appeals stated in Petitioner's case, theft by taking, the crime of which Petitioner was convicted, is broader than larceny and may cover any criminal appropriation of another's property to the taker's use. Thus, as the decision in [*Manning*] was inapplicable to Petitioner's case, he has not shown there is a reasonable probability that the outcome of his appeal would have been different had the issue been argued.

(Doc. 20-3 at 11-12 (citation, footnote and internal quotations omitted)).

In support of this claim, Petitioner argues:

> Both the supposed strategy of the appeal attorney and the holding of the habeas court are beyond unreasonable. Supreme Court holdings trump Appellate Court mistakes. Old cases do not go bad; they get stronger unless contradicted. Manning is the backbone of this case. When properly applied to the facts, the entire case against [P]etitioner crumbles.

> If real estate is not subject to theft, then no theft was proven. If no theft was proven, there was no burglary. If the houses were not "stolen property," then there can be no legitimate argument for theft by deception or forgery. In one fell swoop, the entire RICO case vanishes.

(Doc. 28 at 35; *see id.* at 36 ("In the Order denying the Motion for New Trial, the trial Judge anticipated this potential problem and opined at very least, the "doorknobs had

been stolen" because the locks had been changed.  So the State's major RICO case is reduced to a scheme to steal doorknobs!" (citation omitted))).

> *Manning* alone is fatal to the State's case, and [appellate] counsel's inability to comprehend that is well below the professional standards expected of her. No competent attorney would have chosen to ignore the holdings of *Manning* because the case is old. The habeas court unreasonably misapplied federal ineffective assistance standards and no fair-minded Judge can disagree. This Court should, at the very least, send this case back for a fair and reasonable trial.

(*Id.* at 36).

As noted above, however, the holding in *Manning* does not show that Petitioner was wrongly convicted, and, given the evidence against him, he has not shown that he was prejudiced by appellate counsel's allegedly deficient performance in failing to argue the importance of *Manning*.  The state habeas court found this claim to be lacking in merit, and this Court finds no error in the court's analysis, certainly none that is "well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Richter*, 562 U.S. at 103, especially in light of the Supreme Court's admonition that a claim of ineffective assistance of counsel must fail if there is "*any* reasonable argument that counsel satisfied *Strickland*'s deferential standard," *id.* at 105 (emphasis added).

**2.      Appellate counsel failed to argue that asportation was a required**

34

**element of theft by taking.**

The state habeas court rejected Petitioner's asportation claim because "the record is clear that [appellate] counsel did argue [] that asportation was a required element of theft by taking . . . . The[] mere fact that the Court of Appeals did not agree with her position on the necessity of asportation . . . is irrelevant." (Doc. 20-3 at 12).

Petitioner argues that his "ground was that asportation was required because of how the indictment charged him [with theft by taking, not appropriation]. The appellate attorney did not raise or argue this point. She argued that theft by taking in general required asportation. Defense counsel appropriately objected to [the indictment] and preserved this issue. Appellate counsel did not raise it and obviously, did not understand it." (Doc. 28 at 36-37 (internal quotations omitted))). For the reasons stated by the state habeas court or noted elsewhere herein, this claim lacks merit.

**3.    Appellate counsel failed to argue that abandonment was a question of fact not law that would have excused Petitioner's conduct.**

On direct appeal, the Court of Appeals of Georgia stated with respect to the abandonment issue:

> [T]he State moved in limine to prevent [Petitioner] from arguing that he lacked criminal intent because he believed he was authorized under

35

various civil theories to take over the properties he believed to be abandoned. The trial court granted the motion, ruling that [Petitioner] could refer to the properties as "vacant," but not "abandoned," and he could not proffer his mistaken belief of civil law to justify his actions. In two enumerations, [Petitioner] assigns this as error.

We note that [Petitioner] was allowed to argue that he lacked criminal intent based on his belief that he could "rehabilitate" the vacant properties and based on his behavior in openly advertising and posting notices announcing his intentions with respect to the properties. Based on this, [Petitioner's] counsel argued that "[t]hey actually believed what they were doing was legitimate." Therefore, [Petitioner] was not prohibited from arguing that he lacked criminal intent based on his subjective belief and as manifested by his actions.

Furthermore, "[a]ll citizens are presumed to know the law, and ignorance of the law excuses no one." [Petitioner's] theories on civil law were mistaken, and the trial court's ruling preventing him from presenting those incorrect legal theories to the jury was not reversible error based on the record before us.
. . . .
[Petitioner] urged certain mistaken civil theories as defenses. But [Petitioner's] understanding of those civil law concepts was mistaken, and "[f]ailure to give a charge on mistake of fact is not error where the evidence shows that a party has made a mistake of law."

*Harris*, 750 S.E.2d at 724-25 (footnotes omitted).

Based on the foregoing, the state habeas court concluded that because "the Court of Appeals firmly determined that the mistake made by Petitioner was one of law and not fact, counsel was not ineffective for failing to make this argument." (Doc. 20-3 at 14 (noting also that Petitioner had failed to show that he was prejudiced by counsel's

36

allegedly deficient performance because he had not shown that there was a reasonable probability of a different outcome on appeal had the argument been raised)).

> Petitioner argues that the state habeas court erred for two reasons:

> First, the Court of Appeals was not asked to decide if the civil theories of [P]etitioner were right or wrong because the appellate counsel did not raise those theories or explain why the [trial court] was wrong about abandonment. The court was simply restating the finding of the trial court, not making a finding of its own. Second, the court was not asked to determine if abandonment or adverse possession was a matter of fact or law. The court again was only restating the unrebutted opinion of the court below.
> . . . .
> Had counsel taken the time to do her research and properly raised this ground, what might it have looked like? Georgia law holds that abandonment is a mixed question of fact and law that is reserved for the jury.

(Doc. 28 at 37-38). Petitioner argues that the trial court erred by stating that real estate cannot be abandoned, for "while one cannot abandon *title* to real estate, one can abandon *possession* of it." (*Id.* at 38-40 (emphasis added)). And adverse possession, now called title by prescription under O.C.G.A. § 44-5-160 *et seq.*, "takes place immediately upon hostile possession of the property and continues until shown to be in bad faith," although "[P]etitioner did not even need adverse possession to have squatter's rights." (*Id.* at 39 (arguing that *1845 La Dawn Lane LLC v. Bowman*, 594 S.E.2d 373 (Ga. 2004), which the State cited in support of its motion in limine that

37

Petitioner not be allowed to argue abandonment, "if read carefully, supports the position that real estate <u>can</u> be abandoned but title cannot be lost because of it.  So, the [trial court] was wrong in saying that 1) real estate cannot be abandoned and 2) that adverse possession for 7 to 20 years is the path to abandonment.")).

> Since abandonment is a question of fact that is reserved for the factfinder, it was wrong of the Judge to remove that question from the province of the jury. The Judge did so on the incorrect position that adverse possession and abandonment were questions of law and not fact and that mistakes of law can never negate criminal intent because "ignorance of the law is no excuse." However, there is case law that contradicts the Judge, and counsel failed to use any of it.

(*Id.* at 40-41 ("[If P]etitioner thought, in good faith, that the owners of these properties had left them open and abandoned, he could infer their tacit permission to enter and even to use the property.  Certainly, whether the owner's lack of dominion and control over the property could reasonably be seen as tacit permission is a fact that is reserved for the jury. Not only did counsel not raise this as a legal theory for why abandonment should have been allowed, she did not raise any legal theory at all.").

> Had counsel made the argument that first, the Judge was wrong about two things: 1) Possession of real estate can be abandoned, and 2) Even if [P]etitioner was mistaken about that abandonment and its tacit consent to enter, he still had a defense of mistake of fact and not law. However, counsel did not argue any of these things. The [appellate court] was left with nothing to really decide.

(*Id.* at 41-42).

Aside from all of the other problems that Petitioner faces before he may obtain federal habeas relief, he faces here the problem that he must have known that some person or entity owned the real estate he had appropriated to his own use, yet he proceeded to appropriate the property anyway, accruing all the benefits and profits to himself and his company rather than to the rightful owners.  It is not the role of this court to second guess the Georgia courts on the issue of whether "abandonment" is a question of law or of fact.  And, in any case, because Petitioner was allowed to argue at trial that he believed that what he was doing was not only not wrong or harmful, but actually good for the communities and tenants who were affected by his business, he has not shown that he was prejudiced by the trial court's ruling on the mistake-of-law issue regarding abandonment or by appellate counsel's failure to challenge that ruling on appeal.

**4.    Appellate counsel failed to argue that scienter was unproven as a necessary element of theft by deception of rents and forgery.**

The state habeas court rejected Petitioner's scienter claim as follows:

[T]he record is clear that counsel argued that Petitioner should have been allowed to argue his belief about adverse possession, as that belief led Petitioner to believe that he had legal possession and negated his intent to commit any of the crimes charged, including theft by deception. As to

39

the forgery counts, counsel explained that she did not believe that there were any viable legal grounds to challenge the forgery counts. The mere fact that Petitioner desired that counsel raise this ground differently from the way she chose to raise it does not provide sufficient evidence of ineffective assistance, as an appointed appellate attorney ha[s] no constitutional duty to raise every non-frivolous issue requested by a client. Additionally, as the Court of Appeals determined that Petitioner made a mistake of law when he believed that he was authorized to take over the properties and that a mistake of law did not negate criminal intent in this case, Petitioner has not demonstrated that he was prejudiced by his counsel's decisions.

(Doc. 20-3 at 15 (citations omitted)).

In his reply brief, Petitioner argues:

Counsel had the opportunity to argue scienter in both the theft by deception and forgery counts on appeal and did not do so. When asked about this, she was clear that she "didn't feel comfortable commenting on real estate issues" and "she didn't see anything wrong with the forgery counts." Counsel clearly felt she was out of her depth in real estate issues, and she could not find any issues with the forgeries. Therefore, her decisions were not tactical as they related to real estate because she admitted she did not feel comfortable with the subject. Maybe she should have passed on the case all together. As for the forgeries, if errors can be shown in them, then she passed on them because of her ignorance and not because of a reasoned judgment to do so.

In Ground l.B.3. above, petitioner showed in detail that his legal position to the properties was as a squatter with the right of possession. *See Hannah v. Kenny*, 210 Ga. 824, 828 (1954). Further, it has been shown that Georgia Law allows a squatter to sell his "right of possession." *See Compton v. Newton*, 129 Ga. 619 (1907). In light of these cases, [P]etitioner has a reasonable legal argument that he did not "know or believe" that simply because he did not own the houses that he could not

40

> take them over and rent them out. This argument is solid. Counsel was made aware of these cases by [P]etitioner yet, she did not understand the significance of them.
>
> In Ground l.B.4. above, because of the plain reading of his leases, petitioner showed— in detail—that he did not "purport" to be acting with any authority that was not his. Given the holdings of <u>Hannah</u> and <u>Compton</u> above, petitioner could have reasonably been acting in his own authority. Counsel, by her own admission, did not see this possible ground and thus, left forgery uncontested and doomed any chance of overturning the RICO convictions as a result. Even without the real estate decisions above, it is plain to see that petitioner's leases were intended to be in his own authority. Counsel simply did not do her research because she was uncomfortable with real estate.

(Doc. 28 at 42-43 (citation and footnote omitted)).

This argument presents no grounds for relief before this Court. Petitioner's appellate counsel specifically testified that, in her judgment, there were no viable grounds to challenge the forgery counts, and the state habeas court denied relief on this and other bases. These determinations appear to be correct, and it was entirely defensible for counsel to refrain from raising what she reasonably assessed to be a meritless argument. Petitioner's disagreement with his lawyer's assessment in this regard — and his insistence that she argue that Petitioner somehow was entitled to rent out property that was not his — is not a basis for habeas relief.

**5.    Appellate counsel failed to argue that the State had to apply the holdings of _Stratacos v. State_, 748 S.E. 2d 828 (2013), to the theft by**

41

**deception of rents counts of the indictment.**

In rejecting Petitioner's *Stratocos* claim, the state habeas court stated:

[T]he evidence demonstrates that counsel considered and decided not to argue Stratacos, because she felt that the case would have been inapplicable, because Petitioner's case dealt with real property rather than services. Petitioner has not shown that this decision was an unreasonable decision that no competent attorney in the same situation would have made.

Further, as Stratacos is in fact distinguishable from Petitioner's case, he has not shown that he was prejudiced by counsel's decision. In Stratacos, the Georgia Supreme Court held that, "Where a defendant is charged under O.C.G.A. § 16-8- 3(a) and (b)(5) *for deceitfully promising to perform services*, the State must prove the value of any services he performed in order to prove that he intended to ultimately deprive the victim of property." Stratacos, 293 Ga. at 401 (emphasis added). However, the Court of Appeals determined that the evidence was sufficient under theft by deception under O.C.G.A. § 16-8-3(b)(1), "a person deceives if he intentionally: *creates or confirms another's impression of an existing fact or past event which is false* and which the accused knows or believes to be false," when Petitioner deceived tenants by claiming that he had authority to rent the premises when he did not and the claim led the tenants to make payments to him under this impression. *Harris*, 324 Ga. App. at 413-14 (emphasis added). Thus, Petitioner was guilty of theft by deception for creating a false impression of an existing fact, not for deceitfully promising to perform services, and the fact that the people received full value for the homes they rented is irrelevant.

(Doc. 20-3 at 15-17 (citations omitted)).

Petitioner argues in his reply brief:

42

> [Counsel] did not argue that the State had to apply the holdings of
> <u>Stratacos</u> to the theft by deception of rents counts of the indictment
> because the victims received value for the rents they paid negating the
> intent to deprive element. When asked about <u>Stratacos</u> at the habeas
> hearing, counsel was nonplused and stated that she did not see how it
> applied. This seems to be her standard answer about all the cases raised
> herein. . . . The concept of delivering value for what was paid to negate
> criminal intent is certainly applicable. Counsel apparently did not
> understand that.

(Doc. 28 at 43 (formatting altered; citations omitted)).

This claim fails for all the reasons stated herein, and also because the theft of

rents at issue here could be construed to be theft from the rightful owners of the

properties, not from the renters.

### 6.   Appellate counsel failed to argue that there was insufficient evidence to prove criminal trespass.

The state habeas court rejected Petitioner's criminal trespass argument as

follows:

> Petitioner alleges that appellate counsel was ineffective for failing to
> challenge the sufficiency of the evidence for criminal trespass as the State
> did not prove any knowing and malicious interference with the
> possession and use of the property in count 34. However, as with forgery,
> counsel explained that if she did not believe she had a viable legal ground
> to argue an extension of the law, she did not argue about certain claims
> on appeal. As a result, counsel chose not to challenge the criminal
> trespass. Petitioner has not shown that this choice was indicative of
> ineffectiveness and not conscious, deliberate strategy.

43

(Doc. 20-3 at 17-18 (citations omitted)).

Petitioner argues:

This ground generally speaks for itself. The elements in OCGA § 16-7-20(a) are "knowing[ly] and maliciously" "interfered" with the "use and possession" of property. Petitioner was living in the house at issue. The owner testified that he had not been to, check[ed] on, or had someone check on the property in over four years. There is hardly any way to imagine that under those circumstances one could "knowingly and maliciously" "interfere" with the owner's possession and use. Counsel simply did not address criminal trespass because it was just a misdemeanor.

(Doc. 28 at 43-44).  This claim fails because, among other things, Petitioner is no longer in custody on his one-year sentence for criminal trespass.

### 7.    Discussion

In sum, Petitioner argues:

The Court should look at the work product counsel submitted on appeal. Many of counsel's grounds are completely unsupported with authority or even legal argument. As stated before, one of the most important grounds covered a whopping 129 words! The parallel ground was never finished. She left it at "however" and never came back to it. Her core attack on the RICO conviction was the idea that since some of the underlying predicate acts were deficient, then the RICO should fail. She admitted that this theory flies in the face of *Dorsey v. State*, but she tried to explain that she was hoping for a "change of law," even though, she never addressed the current case law. Since a change in law was certainly not forthcoming from her scant argument, her RICO appeal was utterly doomed in that she did not even challenge the forgery convictions, which were sufficient to sustain the RICO conviction. Counsel's entire attempt in this appeal can

44

be summed up by her statement, "I just didn't feel comfortable commenting on real estate law." At least, that much is obviously true.

There is ample evidence before the Court that this attorney did not seriously try to work this appeal. Her efforts would not be sufficient for a third-year law student, much less a seasoned attorney.
. . . .
It is inconceivable that an attorney wishing to argue that theft of real estate is not recognized in Georgia would consciously choose to ignore <u>Manning</u>. Yet, she did.
. . . .
Petitioner was allowed to argue that he had no criminal intent, true enough. He simply was not allowed to explain what he *was* doing and *why*. This is a pure denial of due process and should have been properly argued. Even if petitioner was wrong about the <u>fact</u> that he held adverse possession or the <u>fact</u> that the properties were abandoned, it would have shown his lack of intent to <u>unlawfully take</u> the properties[,] . . . but [appellate counsel] did not argue [this issue] in a manner [to provide] the [appellate] court [with] the reasons as to why [it] should reverse. As such, [counsel] impermissibly prejudiced the outcome of the appeal.

(Doc. 28 at 44-47).

But, as noted above, Petitioner has defaulted his challenge to his RICO convictions based on at least two predicate acts of contract deception, six predicate acts of rent deception and six predicate acts of forgery, and he also has defaulted his challenge to his two separate contract deception convictions. Thus, regardless of whether his appellate counsel's performance was deficient in all the ways that he alleges in his federal habeas petition, he has not "show[n] that the state [habeas] court's

45

ruling[s] on . . . [his claims of ineffective assistance of appellate counsel were] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *see Richter*, 562 U.S. at 103, especially in light of the Supreme Court's admonition that a claim of ineffective assistance of counsel must fail if there is "*any* reasonable argument that counsel satisfied *Strickland*'s deferential standard," *id.* at 105 (emphasis added).  In short, Petitioner has not shown that his appellate counsel's performance prejudiced the outcome of his appeal.

**C.    Ground Three: Trial Court Errors**

In ground three, Petitioner claims that the trial court violated his due process right to a fair trial when it "impermissibly limited the defense from using the concepts of abandonment, adverse possession, and the Protecting Tenants at Foreclosure Act (2009) to show that he had no criminal intent to commit the crimes charged."  (Doc. 1 at 15-16).  As noted above, the Court of Appeals of Georgia rejected this claim.  *See Harris*, 750 S.E.2d at 724 (concluding that Petitioner's "theories on civil law were mistaken, and the trial court's ruling preventing him from presenting those incorrect legal theories to the jury was not reversible error based on the record before us").

Respondent argues that because Petitioner did not raise this error as a due

46

process claim on direct appeal or in his state habeas proceedings, he has procedurally defaulted the claim. (Doc. 11-1 at 16-17). "Alternatively, to the extent that Petitioner seeks to raise the same claim of trial court error in ground 3 that he raised in his direct appeal, Respondent submits that the ground does not state a claim for relief as no federal question is presented." (*Id.* at 17). Petitioner responds:

> In Error VIII of the appeal counsel argued that failing to allow [P]etitioner to argue his civil ideas violated "the long-standing rule in this state, which requires instruction to the jury on the rules of law related to the sole defense, the absence of which 'prejudices the defendant's right to a fair and impartial trial." quoting *Griffin v. State*, 267 S.E.2d 867 (1980). Clearly counsel raised and argued that petitioner was denied a fair trial.

(Doc. 28 at 49 (citation omitted)). Regarding the substance of his ground three claim, Petitioner argues:

> Petitioner had a weighty interest to a complete defense. As has been seen, the [trial court] was wrong about the law, the prosecutor was wrong about the law, and the appellate attorney was wrong about the law, but when [P]etitioner was seen to be wrong about the law, he was not allowed to use it to show what his intent actually was. Most importantly, being wrong about adverse possession is a defense against criminal intent. If one genuinely intends to take adverse possession, that is a legal means of acquiring property in the State of Georgia. Title 44, Chapter 5 is "Acquisition of Property," and adverse possession is one of those legally accepted methods of acquisition. OCGA § 16-8-2 theft by taking requires one to have the criminal intent to "unlawfully take" the property of another. If [P]etitioner could convince the jury that he had the intent to "lawfully take" the property of another by adverse possession, he has not

47

committed a crime even if he does it incorrectly and ultimately is unsuccessful.

The court excluded this defense because a mistake of law is not a defense. This mistake was not about law but about fact or, as has been shown, was not a mistake at all. [P]etitioner was either mistaken about his legal possession or not, but either way, he was not trying to "unlawfully take" property from another.

(Doc. 28 at 50).

Based on the discussion above — including this Court's conclusions regarding Petitioner's contract deception predicate acts and separate convictions, which are unaffected by whether or not Petitioner was allowed to present his asserted defenses to his other RICO predicate acts; and the "fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters," *Herring*, 397 F.3d at 1355 — the Court finds that ground three offers no federal habeas relief to Petitioner.  The Court notes that Petitioner was not mistaken about any relevant fact about the status of the properties at issue here, but rather he was mistaken about the legal consequences of those relevant facts — he was mistaken about the law.

### D.    Ground Four: Double Jeopardy

In ground four, Petitioner claims that he "was subjected to double jeopardy

48

when he was convicted of both RICO and two of the underlying predicate acts that were part of the 'pattern of racketeering activity' which is an element of the RICO." (Doc. 1 at 16-17).  Respondent argues that Petitioner did not raise this claim in state court and therefore it is procedurally defaulted.  (Doc. 11-1 at 18-20).  Petitioner "has decided to withdraw this ground altogether."  (Doc. 28 at 51).

### E.    Summation

In summation, Petitioner argues:

[Appellate c]ounsel was lost as she admitted in the habeas hearing. She did not feel comfortable with this subject, and her performance confirmed it. She made wholly conclusory arguments, she left arguments unfinished, and she left several arguments without any legal reasoning at all. No competent attorney would produce such work. And there can be no fair-minded disagreement between jurists about this.

Prejudice is always a thorny and difficult subject. For to find prejudice, one must put themselves in the mind of the fact finder and divine what they might reasonably have done. But the issues here are clear. There is a real issue as to whether [P]etitioner actually had squatter's rights to the properties. There is a real issue as to whether Georgia Law allows for the negotiation of those rights for consideration. There is a real issue as to whether these properties were abandoned. Finally, there is a serious argument that even if [P]etitioner was wrong about having adverse possession about the property that such intention very well could negate the requisite criminal intent to commit the criminal acts. These are issues for a jury and not a judge. No one can honestly contend that there is not a reasonable possibility that, were these issues properly presented, [] they would have been successful in gaining a new trial. If the Court will, **order the State to brief these issues**.

49

(Doc. 28 at 52-53 (footnote omitted)).

But, as noted above, Petitioner's arguments — although cleverly presented — are unavailing, for a number of reasons, and therefore his federal habeas petition should be denied.

## III.   Certificate Of Appealability

A state prisoner must obtain a certificate of appealability (COA) before appealing the denial of his federal habeas petition.  28 U.S.C. § 2253(c)(1)(A).  A COA may issue only when the petitioner makes a "substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted).  A petitioner need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)).  Because there is no reasonable argument to support a finding that Petitioner has presented a non-defaulted federal habeas claim of sufficient merit to

50

warrant relief, a certificate of appealability should not issue in this case.

## IV.   <u>Conclusion</u>

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **DENY** the petition for a writ of habeas corpus (Doc. 1) and **DENY** Petitioner a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO RECOMMENDED** this 23rd day of March, 2018.

_____

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)